UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRISTY KELLY, et al.,<br><br>            Plaintiffs,<br><br>      v.<br><br>ROGER DENAULT, et al.,<br><br>            Defendants. | Case No.  18-cv-03175-SVK<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE**<br><br>Re: Dkt. No. 24 |

## I.    INTRODUCTION

On May 29, 2018, Plaintiffs Kristi Kelley and Chad Loya (collectively, "Plaintiffs"), individually and on behalf of the United States filed a complaint to redress violations of the Federal False Claims Act.  ECF 1 ("Complaint").  Plaintiffs rented a residential unit from Defendants Roger Denault and the Denault Family Limited Partnership (collectively, "Defendants") for over a decade.  *Id.* at ¶ 9.  Plaintiffs allege that Defendants violated the terms of their Housing Assistance Payment Contract ("HAP Contract") and took a number of unlawful actions related to Plaintiffs' tenancy.  *See id.*  On October 11, 2018, Defendants filed a motion to dismiss and motion to strike Plaintiffs' first, second, third and tenth claims as well as Plaintiffs' request for punitive damages.  ECF 30.  The Court held a hearing on December 11, 2018.  Based on the pleadings, submissions of the Parties, arguments presented at the hearing and relevant law, the Court **GRANTS** Defendants' motion as to Plaintiffs' third claim and **DENIES** Defendants' motion as to Plaintiffs' first, second and tenth claims as well as to Plaintiffs' punitive damages allegations.

////

////

## II. BACKGROUND

### A. Factual Background

The Court bases the following factual background on the allegations set forth in Plaintiffs' Complaint, which the Court takes as true when ruling on Defendants' motion to dismiss and motion to strike. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted).

Plaintiffs and their two children rented an unpermitted residential unit located at 8485A Glen Arbor Road in Ben Lomond, California, from December 2006 through May 2018 ("Subject Premises"). ECF 1 at ¶ 9. Defendants own the Subject Premises, which is a 500 square foot, one bedroom dwelling, constructed in 1978. *Id.* at ¶¶ 10, 18. Santa Cruz County never approved the Subject Premises for use as either a residential rental unit or as a second unit. *Id.* at ¶ 19. Indeed, when Defendant Denault applied for a permit to expand the septic system in 2002, he labeled the Subject Premises as an office. *Id.* at ¶ 20.

Plaintiff Kelly became a Section 8 voucher recipient in September 2015. *Id.* at ¶ 9. The federal government assists low-income families, the elderly and disabled persons in obtaining decent, safe and sanitary housing in the private market through the Section 8 voucher program. The United States Department of Housing and Urban Development ("HUD") implements the program by providing funding to public housing agencies to use as rent subsidies to pay landlords renting to tenants with Section 8 vouchers.

Before approving Plaintiffs' tenancy with Defendants, the Housing Authority of the County of Santa Cruz ("Housing Authority") required that Defendants enter into a HAP Contract with the Housing Authority. *Id.* at ¶ 26. The HAP Contract imposes conditions on Defendants. *Id.* at ¶¶ 27–28. In particular, it requires that Defendants certify that the lease complies with local and state law and that Defendants will not receive any rent or other consideration for the property beyond the payment amount provided for in the HAP Contract. *Id.* The HAP Contract further provides that Plaintiffs would pay $202 per a month in rent as well as their share of the utilities, while the federal government would contribute $748 in subsidies for a total rent of $950 a month. *Id.* at ¶ 32. In October 2016, the Housing Authority issued an HAP Contract amendment that reduced Plaintiffs' portion of the rental payments to $33 and increased the federal government's

payments to $917. *Id.* at ¶ 33.

Defendants increased Plaintiffs' share of the water bill to 60% in June 2016, and Plaintiffs paid this increased utility bill through December 2017. *Id.* at ¶¶ 36, 42. In April 2017, Defendants sent Plaintiffs notice of a rent increase from $950 to $1,100 without seeking prior approval or notifying the Housing Authority. *Id.* at ¶ 38. Defendants then served Plaintiffs with two 90-day notices to terminate tenancy and filed an unlawful detainer action against Plaintiffs on December 20, 2017. *Id.* at ¶¶ 39–40, 44. In January 2018, Defendants demanded $1,200 in allegedly delinquent utility payments. *Id.* at ¶ 43.

Plaintiffs also allege that the Subject Premises suffers from a number of habitability problems. *Id.* at ¶ 25. In addition to frequent septic and sewage problems, the Subject Premises had electrical issues, a leaking roof, [and] growth of toxic biological contaminants." *Id.* at ¶ 25. Finally, Defendants complained several times to Plaintiffs about their water use suggesting that Plaintiffs limit their showering or take sponge baths to avoid over taxing the septic system. *Id.* at ¶¶ 37–38.

### B. Defendants' Motion to Dismiss and Motion to Strike

On October 11, 2018, Defendants filed a motion to dismiss and motion to strike Plaintiffs' first, second, third and tenth claims as well as Plaintiffs' request for punitive damages. ECF 30. Plaintiffs' first claim alleges violations of the Federal False Claims Act (31 U.S.C. § 3729 *et seq.*) based on Defendants' (1) charging and collecting additional side-payments[1] not approved by the Housing Authority, and (2) misrepresentations regarding the subject premise's legality and compliance. ECF 1 at ¶¶ 56–68. Plaintiffs' second and third claims allege that Defendants retaliated against Plaintiffs by harassing and seeking to evict Plaintiffs after they raised habitability issues in violation of Cal. Civ. Code § 1942.5 (Count Two) and Santa Cruz County Code § 8.43.020 (Count Three). *Id.* at ¶¶ 69–77. Plaintiffs bring their tenth claim based on Defendants' alleged intentional misrepresentation of "the legality, safety and habitability code compliance of the Subject Premises by false representation, concealment, and nondisclosure." *Id.*

---

[1] The term excess side-payments refers to any additional payments beyond those provided for in the HAP Contract, such as excess rent or utility charges.

1   at ¶ 124. Defendants withdrew their challenge to Plaintiffs' second claim in their reply brief.
2   ECF 31 at 3.
3       All Parties have consented to the jurisdiction of the undersigned magistrate judge. ECF 8;
4   ECF 10; ECF 23.

## III. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), the Court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires that the plaintiff allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although courts do not require "heightened fact pleading of specifics," *Twombly*, 550 U.S. at 570, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. Rather, the plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Id.*

## IV. DISCUSSION

### A. Plaintiffs' False Claims Act Claim

#### 1. Legal Background

Plaintiffs' first claim seeks relief under the False Claims Act. ECF 1 at ¶¶ 56–68. The False Claims Act imposes liability on any person who knowingly submits a false claim to the United States government. 31 U.S.C. § 3729(a). Courts have recognized two theories of liability under the False Claims Act relevant to this case. First, the implied certification theory provides that "liability can attach when the defendant submits a claim for payment that makes specific representations about the goods or services provided, but knowingly fails to disclose the defendant's noncompliance with a statutory, regulatory, or contractual requirement." *Universal Health Servs., Inc. v. United States*, 136 S. Ct. 1989, 1995 (2016). Second, liability can arise based on the promissory fraud theory. That theory provides "that liability will attach to each claim submitted to the government under a contract, when the contract or extension of government

benefit was originally obtained through false statements or fraudulent conduct." *U.S. ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1173 (9th Cir. 2006) (citations omitted). To state a claim under either of those two theories, a plaintiff must plead four "essential elements[:] . . . (1) a false statement or fraudulent course of conduct, (2) made with scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due." *Id.* at 1174.

Here, Plaintiffs allege that Defendants submitted false claims for federal funds as part of the Section 8 voucher program. ECF 1 at ¶¶ 56-68. Plaintiffs specifically allege that two theories support their False Claims Act claim against Defendants. First, Defendants misrepresented the legality of the Subject Premises in violation of the HAP Contract which requires that the rental property be legal under state law, and second, Defendants charged and collected excess side-payments beyond the approved amount under the HAP contract. *Id.* at ¶ 60. Defendants' motion to dismiss focuses on the second and third elements of a False Claims Act claim—scienter and materiality. ECF 24 at 2.

### 2. Scienter

Under the False Claims Act, a person acts "knowingly" if that person "(i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1)(A). The term "knowingly" within the False Claims Act context "requires no proof of specific intent to defraud." *Id.* § 3729(b)(1)(B). The Ninth Circuit has further clarified that to satisfy the scienter requirement, a defendant must make "some request for payment containing falsities made with . . . knowledge of the falsity and with intent to deceive." *Hendow*, 461 F.3d at 1172 (citation and internal quotation marks omitted). Thus, "a palpably false statement, known to be a lie when it is made, is required for a party to be found liable under the False Claims Act." *Id.*

Plaintiffs' Complaint contains adequate allegations regarding scienter for each of their two theories of False Claims Act liability. First, the Complaint alleges that Defendants had knowledge of the illegality of the Subject Premises based on Defendants' misrepresentation on their July 12, 2002, permit application to expand the septic system in which Defendant Denault labeled the

5

structure that would become the Subject Premises as an office. ECF 1 at ¶ 20. This allegedly fraudulent permit application was made prior to Defendants signing the HAP Contract in 2015. As a result, Defendants' alleged failure to advise the Housing Authority about the illegality of the unit is a misrepresentation by omission that "could constitute a knowing and intentional fraud on the government." *U.S. ex rel Sutton v. Reynolds*, 564 F. Supp. 2d 1183, 1188 (D. Or. 2007). Second, the terms of the HAP Contract limiting the payment that Defendants could collect from Plaintiffs support a plausible inference "that Defendant knew of the limitation, and that Defendant was obligated to advise [the Housing Authority] if he collected additional rents from Plaintiffs." *Id.* Defendants' failure to inform the Housing Authority that they sought to collect additional side-payments is also a misrepresentation by omission that could qualify as a knowing and intentional fraud on the government. *Id.*; *see also United States v. Baran*, No. CV1402639RGKAJWX, 2015 WL 5446833, at *5 (C.D. Cal. Aug. 28, 2015) (finding that allegations that "Defendant knowingly violated the HAP Contract when she demanded and received side rent payments from Plaintiff while simultaneously receiving housing assistance payments" satisfied the scienter requirement). Accordingly, Plaintiffs' Complaint contains sufficient allegations to adequately plead scienter for the purposes of stating a claim under the False Claims Act.

### 3. Materiality

A claim under the False Claims Act must include "[a] misrepresentation about compliance with a statutory, regulatory, or contractual requirement" that is "material to the Government's payment decision." *Universal Health*, 136 S. Ct. at 1996. The Supreme Court explored this element in depth in *Universal Health*, where the plaintiffs brought a False Claims Act case against a healthcare facility that submitted reimbursement claims to the Massachusetts Medicaid program without disclosing that it operated in violation of various regulations including licensing and supervision requirements. *Id.* at 1997–98. The Court held that to support an action under the False Claims Act, "a misrepresentation about compliance with a statutory, regulatory, or contractual requirement must be material to the Government's payment decision." *Id.* at 2002 (noting that "'material' means having a natural tendency to influence, or be capable of influencing,

1   the payment or receipt of money or property") (citations and internal quotation marks omitted).
2   The Court then remanded the case for consideration based on this standard. *Id.* at 2004.  On
3   remand, the First Circuit held that the plaintiffs' allegations satisfied the materiality requirement,
4   observing that the state regulations at issue "made it clear" that government "expects that
5   individuals in the business of providing mental health services in the Commonwealth [to] have
6   adequate training and professional credentials" and that "[c]ompliance, or lack thereof, with these
7   regulations seem to us the textbook example of representations that would 'likely . . . induce a
8   reasonable person to manifest his assent.'" *United States ex rel. Escobar v. Universal Health
9   Servs., Inc.*, 842 F.3d 103, 111 (1st Cir. 2016) (quoting *United Health*, 136 S. Ct. at 2003).

10       Defendants contend that *Universal Health* stands for the proposition that a requirement
11   that a defendant comply with local and state laws is too general to satisfy the materiality prong,
12   and as a result, Plaintiffs' theory regarding Defendants' false certification of the Subject Premises'
13   legality fails to state an actionable claim. ECF 24 at 4–5.  Although "statutory, regulatory, and
14   contractual requirements are not automatically material, even if they are labeled conditions of
15   payment," *Universal Health*, 136 S. Ct. at 2001, here, Plaintiffs have sufficiently alleged that
16   Defendants' false certification regarding the legality of the Subject Premises is material.

17       Plaintiffs allege that the HAP Contract requires Defendants to certify that "[t]he Lease is
18   consistent with State and local law" and that "[h]ad HUD been aware that there was no certificate
19   of occupancy issued for the unit, it would not have agreed to subsidize the subject unit."  ECF 1 at
20   ¶ 27 (quoting ECF 1-1 at 4) (internal quotation marks omitted).  That certification goes directly to
21   subject of the HAP Contract—the residence for the Section 8 voucher recipient and whether the
22   landlord is legally permitted to rent that residence.  Further, requiring that the rental unit be legal
23   serves the housing voucher program's purpose, which is ensuring that "eligible families can afford
24   decent, safe, and sanitary housing."  24 C.F.R. § 982.1(a)(1).  Legal compliance helps to confirm
25   that the housing is indeed decent, safe and sanitary.  And it further ensures that voucher recipients
26   have a stable place to live and will not have to vacate the premises should the local government
27   choose to enforce its municipal code.  As a result, misrepresenting the legality of the Subject
28   Premises is sufficient to satisfy the materiality requirement for the purposes of surviving a motion

to dismiss.

The amount of a Section 8 recipient's monthly payment is likewise material to the government's payment decision. Several courts have recognized that collecting or attempting to collect illegal-side-payments gives rise to a cognizable claim under a Fair Claims Act false-certification theory. *United States ex rel. Carmichael v. Gregory*, 270 F. Supp. 3d 67, 71 (D.D.C. 2017); *Doe v. Gormley*, No. CV ADC-15-2183, 2016 WL 4400301, at *5 (D. Md. Aug. 17, 2016) (collecting cases); *United States ex rel. Ellis v. Jing Shu Zheng*, No. 216CV01447APGNJK, 2018 WL 1074483, at *4 (D. Nev. Feb. 26, 2018); *Sutton*, 564 F. Supp. 2d at 1189–90. As the court in *Sutton* observed, the collection of excess side-payments "affect[s] one of the most basic terms of the Contract and [is] relevant to HAP's decision to continue to pay the subsidy every month." 564 F. Supp. 2d at 1189; *Carmichael*, 270 F. Supp. 3d at 71 (holding that there is no "doubt that the amount of rent he charged is a 'material' term"). The charging of excess side-payments also violates federal regulations, which provide that "[t]he owner may not demand or accept any rent payment from the tenant in excess of this maximum." 24 C.F.R. § 982.451(b)(4)(ii). Most importantly, the Section 8 voucher program exists to aid low-income families in obtaining housing, "and that purpose is clearly undermined when a program participant overcharges a beneficiary of the program." *Carmichael*, 270 F. Supp. 3d at 71. Indeed, federal regulations prohibit the government from "approv[ing] a tenancy unless the rent is reasonable." 24 C.F.R. § 982.1(a)(2).

At oral argument, Defendants posited that Plaintiffs' allegation of a single impermissible rent increase is insufficient to rise to the level of materiality. Defendants mischaracterize Plaintiffs' allegations and the law. First, Plaintiffs allege that Defendants charged or collected three side-payments from Plaintiffs. ECF 1 at ¶¶ 36, 38, 43. For example, Defendants allegedly increased Plaintiffs' share of the water bill to 60% in June 2016, and Plaintiffs paid this extra side-payment through December 2017. *Id.* at ¶¶ 36, 41. Second, the case law does not support Defendants' argument that the Court should read a pervasiveness requirement into the materiality analysis because a single demand for side-payments may satisfy the materiality requirement. *See Sutton*, 564 F. Supp. 2d at 1188–89 (D. Or. 2007) (holding that requiring the plaintiffs to make an

8

1  extra $30 per a month side-payment satisfied the materiality requirement on a motion for summary
2  judgment).  Accordingly, Defendants' alleged attempts to charge and collect excess side-payments
3  constitute a material violation of the HAP Contract, and Plaintiffs' Complaint states a claim under
4  the False Claims Act.

### B. Plaintiffs' Claim Under Santa Cruz County Code § 8.43.020(C)

In addition to Plaintiffs' second claim for unlawful retaliation under Cal. Civ. Code § 1942.5, Plaintiffs bring a claim for unlawful retaliation under Santa Cruz County Code § 8.43.020(C). ECF 1 at ¶¶ 69–77.  Santa Cruz County Code § 8.43.020(C) is almost identical to Cal. Civ. Code § 1942.5(d) and provides that:

> It shall be unlawful for a lessor to increase rent, decrease services, cause a lessee to quit involuntarily, bring an action to recover possession, or threaten to do any of such acts, for the purpose of retaliating against the lessee because he or she has lawfully organized or participated in a lessees' association or an organization advocating for affordable rents or lessees' rights or has lawfully and peaceably exercised any rights under the law.

Santa Cruz County Code § 8.43.020(C).

Defendants argue that the California litigation privilege set forth in Cal. Civ. Code § 47(b) preempts Santa Cruz County § 8.43.020 to the extent that it attempts to prohibit any access to the judicial system. ECF 24 at 7.

### 1. Preemption Under California Law

Article XI, section 7 of the California Constitution provides that "[a] county or city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws." Cal. Const. art. XI, § 7. "If otherwise valid local legislation conflicts with state law, it is preempted by such law and is void." *Sherwin-Williams Co. v. City of Los Angeles*, 4 Cal. 4th 893, 897 (1993) (citations and internal quotation marks omitted). The California Supreme Court has recognized that a conflict exists when "local legislation 'duplicates, contradicts, or enters an area fully occupied by general law, either expressly or by legislative implication.'" *Id.* (citations and internal quotation marks omitted).

////
////

9

### 2. The California Litigation Privilege

Cal. Civ. Code § 47(b) privileges any "publication or broadcast" made in any "judicial proceeding." This privilege, also known as the California litigation privilege, "applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." *Silberg v. Anderson*, 50 Cal. 3d 205, 212 (1990) (citations omitted). The "privilege is absolute in nature, applying 'to all publications, irrespective of their maliciousness.'" *Action Apartment Assn., Inc. v. City of Santa Monica*, 41 Cal. 4th 1232, 1241 (2007) (quoting *Silberg*, 50 Cal. 3d 205, 216 (1990)) (emphasis in original). Although only communications made "in furtherance of the objects of the litigation" fall under the protection of the litigation privilege, *id.* (quoting *Silberg*, 50 Cal. 3d at 219) (internal quotation marks omitted), a prelitigation communication may still be privileged "when it relates to litigation that is contemplated in good faith and under serious consideration." *Id.* at 1251 (citations omitted).

The litigation privilege's principal purpose is to provide litigants and witnesses with "the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions." *Silberg*, 50 Cal. 3d at 213 (citations omitted). To further this purpose, the California Supreme Court has "given the litigation privilege a broad interpretation." *Action Apartment*, 41 Cal. 4th at 1241. And "courts have applied the privilege to eliminate the threat of liability for communications made during all kinds of truth-seeking proceedings: judicial, quasi-judicial, legislative and other official proceedings." *Silberg*, 50 Cal. 3d at 213.

### 3. Analysis

In *Action Apartment*, the California Supreme Court addressed a similar ordinance to Santa Cruz County Code § 8.43.020(C). The Court ruled that the litigation privilege preempted the portion of a Santa Monica city ordinance that "authorize[d] civil and criminal penalties against a landlord who maliciously . . . brings any action to recover possession of a rental unit without a reasonable factual or legal basis." *Action Apartment*, 41 Cal. 4th at 1237. The Court held that the litigation privilege conflicted with and preempted that portion of the ordinance, observing that by enabling "actions alleging that a landlord had improperly filed an action to recover possession of

10

rental housing," the ordinance "would severely restrict landlords' freedom of access to the courts." *Id.* at 1243, 1249–50.

Plaintiffs contend that since *Action Apartment*, courts have reached a consensus that the litigation privilege does not preempt retaliatory eviction actions. ECF 30 at 15. However, the cases cited by Plaintiffs only address whether the litigation privilege preempts Cal. Civ. Code § 1942.5; they do not address whether it would preempt a local ordinance. *Winslett v. 1811 27th Ave., LLC*, 26 Cal. App. 5th 239, 254 (Ct. App. 2018);[2] *Banuelos v. LA Inv., LLC*, 219 Cal. App. 4th 323, 331 (2013). Plaintiffs similarly cite *People ex rel. Alzayat v. Hebb*, 18 Cal. App. 5th 801 (Ct. App. 2017), which also addresses a state statute, Cal. Ins. Code § 1871. The distinction between a state and local statute is paramount. *Banuelos* distinguishes *Action Apartment* on this very basis, stating that "[t]he holding in *Action Apartment* is not controlling here because the conflict in that case was between a statute and a city ordinance while our case involves a conflict between two coequal statutes." 219 Cal. App. 4th at 331.

*Action Apartment* specifically recognized the distinction between state and local laws, noting that "local governments may not create their own exceptions to the litigation privilege." *Id.* at 1247. Indeed, at least one California court has held that a local ordinance creating a cause of action for wrongful evictions is preempted by the litigation privilege. *See Feldman v. 1100 Park Lane Assocs.*, 160 Cal. App. 4th 1467, 1493–94 (2008) ("The cause of action for wrongful eviction in violation of the San Francisco Rent Ordinance, San Francisco Administrative Code sections 37.9 or 37.10A, was preempted by the litigation privilege."); *see e.g. Phillips v. Archstone Simi Valley LLC*, No. CV155559DMGPLAX, 2016 WL 400100, at *11 (C.D. Cal. Feb. 1, 2016) (holding that while the litigation privilege did not preempt Cal. Civ. Code § 1942.5, it "abrogates common law retaliatory eviction claims that arise out of unlawful detainer actions").

Nevertheless, *Action Apartment* also recognized that a local ordinance may not be preempted when it authorizes penalties or a cause of action based on non-litigation

---

[2] The plaintiff in *Winslett* did bring a claim under Oakland's Just Cause for Eviction Ordinance. 26 Cal. App. 5th at 254. However, the plaintiff based this claim on the defendant's "retributive tactics prior to the eviction proceedings," and the Court of Appeal did not analyze whether the litigation privilege preempted the Oakland ordinance. *Id.* at 260.

communications. Indeed, the Court upheld another provision of the Santa Monica ordinance at issue in *Action Apartment*, which authorized penalties based the service of eviction notices. 41 Cal. 4th at 1250. The Court found that the service of an eviction notice was not necessarily a communication made in furtherance of litigation. *Id.* at 1250–51. Thus, that portion of the ordinance "conflicts with, and is preempted by, the litigation privilege [only] to the extent it prohibits, criminalizes, and establishes civil penalties for eviction notices where litigation is contemplated in good faith and under serious consideration." *Id.* at 1252. This raises a factual issue that defeats a facial preemption defense because "[w]hether a prelitigation communication relates to litigation that is contemplated in good faith and under serious consideration is an issue of fact." *Id.* at 1251; *see also Rental Hous. Assn. of N. Alameda Cty. v. City of Oakland*, 171 Cal. App. 4th 741, 767 (2009).

Although Santa Cruz County Code § 8.43.020(C) is not limited by its terms to retaliatory evictions like the portion of the Santa Monica ordinance invalidated in *Action Apartment*, Plaintiffs base their third claim solely on Defendants' unlawful detainer action. Plaintiffs allege that "Defendants attempted to evict Relators in retaliation for Relators' complaints and their refusal to submit to a rent increase while severe habitability issues remained unrepaired which constituted Defendants' exercise of their rights under Santa Cruz County Code § 8.43." ECF 1 at ¶ 74. As the California Supreme Court recognized, Defendants' attempt to evict Plaintiffs through an unlawful detainer action is a communication protected by the litigation privilege. *Action Apartment*, 41 Cal. 4th at 1249 ("We contemplate no communication that is more clearly protected by the litigation privilege than the filing of a legal action."). Because Plaintiffs do not base their third claim on a non-litigation communication, the California litigation privilege preempts their claim. Accordingly, the Court grants Defendants' motion to dismiss Plaintiffs' third claim. Plaintiffs may attempt to amend their claim, provided that they can allege, in good faith, non-litigation communications that give rise to liability under Santa Cruz County Code § 8.43.020(C).

### C. Plaintiffs' Intentional Misrepresentation Claim

Defendants move to dismiss Plaintiffs' tenth claim, contending that Plaintiffs fail to meet the heightened pleading requirement of Federal Rule of Civil Procedure 9(b). ECF 24 at 7–8.

1  Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the
2  circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a
3  person's mind may be alleged generally." Fed. R. Civ. P. 9(b). To satisfy that rule, a plaintiff
4  must allege the "who, what, where, when, and how" of the charged misconduct. *Cooper v.*
5  *Pickett*, 137 F.3d 616, 627 (9th Cir. 1997).
6        Plaintiffs provide sufficiently specific allegations to satisfy Rule 9(b)'s standard. First,
7  Plaintiffs identify the particular misrepresentations that Defendants allegedly made as false
8  certifications of "the legality, safety and habitability code compliance of the Subject Premises."
9  ECF 1 at ¶ 125. Second, the Complaint further alleges that Defendants had knowledge of the
10 illegality of the Subject Premises based on Defendant Denault's misrepresentation on a July 12,
11 2002, permit application to expand the septic system in which he labeled the Subject Premises as
12 an office. *Id.* at ¶ 20. Third, Plaintiffs allege that they "relied on Defendants' implied or express
13 representations that the Subject Premises was a legal dwelling unit." *Id.* at ¶ 19. Finally, Plaintiffs
14 allege that they "acted in justifiable reliance on Defendants' promises in renting the Subject
15 Premises," *id.* at ¶ 127, and they "were not aware that the Subject Premises was thus not a legal
16 rental unit until county code enforcement activity took place in early 2018." *Id.* at ¶ 19. Such
17 allegations identify Defendants' allegedly fraudulent conduct with sufficient particularity to satisfy
18 Rule 9(b). *See Cooper*, 137 F.3d at 627 (holding that a complaint satisfies Rule 9(b)'s
19 particularity requirement when it "identifies the circumstances of the alleged fraud so that
20 defendants can prepare an adequate answer") (citations and internal quotation marks omitted).

### D. Plaintiffs' Request for Punitive Damages

22       Defendants move to dismiss or in the alternative strike Plaintiffs' punitive damages claims.
23 ECF 24 at 8–9. They argue that Plaintiffs' Complaint fails to state facts entitling them to punitive
24 damages under California law and that none of the acts identified by Plaintiffs constitute the level
25 of extreme conduct necessary to trigger punitive damages. *Id.*
26       California law provides for punitive damages where "the defendant has been guilty of
27 oppression, fraud, or malice." Cal. Civ. Code § 3294(a). A defendant acts with malice by either
28 intending to cause injury to the plaintiff through his or her conduct or by carrying on "despicable

13

conduct . . . with a willful and conscious disregard of the rights or safety of others." *Id.* § 3294(c)(1). Oppression is "despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights." *Id.* § 3294(c)(2). Fraud is "an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury." *Id.* § 3294(c)(3).

A plaintiff may recover punitive damages for a retaliatory eviction in certain circumstances under California law. Cal. Civ. Code § 1942.5(h)(2) specifically provides for "[p]unitive damages in an amount of not less than one hundred dollars ($100) nor more than two thousand dollars ($2,000) for each retaliatory act where the lessor or agent has been guilty of fraud, oppression, or malice with respect to that act." For example, the Court in *Baran* awarded punitive damages based on three retaliatory actions:

> (1) Defendant demanded that Plaintiff move out of his home, without any cause, and threatened to bring an action to evict him if he stayed; (2) Defendant increased Plaintiff's rent by purporting to terminate the HAP Contract and hold him responsible for the full monthly rent to owner; and (3) Defendant harassed Plaintiff by leaving aggressive, abusive, and profane messages on his answering machine regarding his tenancy.

2015 WL 5446833, at *9; *see also Rich v. Schwab*, 63 Cal. App. 4th 803, 818 (1998) (upholding an award of punitive damages under Cal. Civ. Code § 1942.5).

Plaintiffs in this case allege similar retaliatory actions. They allege that Defendants sought to evict Plaintiffs through a retaliatory unlawful detainer action (ECF 1 at ¶ 44), Defendants charged and collected side-payments in violation of the HAP Contract (*id.* at ¶¶ 38–43) and Defendants harassed Plaintiffs regarding their water use. *Id.* at ¶¶ 36–37. These allegations are sufficient to support Plaintiffs' punitive damage claims at the pleading stage. The Court notes that these and Plaintiffs' other allegations may also support punitive damages arising out of Plaintiffs' tort claims. *See Stoiber v. Honeychuck*, 101 Cal. App. 3d 903, 920–22 (Ct. App. 1980) (holding that punitive damages are available for nuisance as an intentional tort and intentional infliction of emotional distress claims); *Rivera v. Sassoon*, 39 Cal. App. 4th 1045, 1046 (1995) (upholding a punitive damages award for tenants who brought an action against their landlord for breach of the

14

warranty of habitability, nuisance and other torts).  Accordingly, Plaintiffs' Complaint sets forth adequate allegations to support their claim for punitive damages at the pleadings stage.

## V. CONCLUSION

For the reasons set forth above, the Court **ORDERS** as follows:

- The Court **DENIES** Defendants' motion to dismiss Plaintiffs' first, second and tenth claims.
- The Court **GRANTS** Defendants' motion to dismiss Plaintiffs' third claim without prejudice.
- The Court **DENIES** Defendants' motion to dismiss or in the alternative strike Plaintiffs' punitive damages claims.
- The Court also **GRANTS** Plaintiffs' unopposed request for judicial notice (ECF 30-1).

The Court **GRANTS** Plaintiffs the opportunity to amend their third claim by **December 31, 2018**, Defendants must file their response by **January 9, 2019**.  The Parties are to appear for a case management conference on **January 22, 2019**, with a joint case management statement to be filed by **January 15, 2019**.

**SO ORDERED.**

Dated: December 20, 2018

_Susan van Keulen_
SUSAN VAN KEULEN
United States Magistrate Judge